Robert PALMISCIANO

v.

BURRILLVILLE RACING AS-SOCIATION d.b.a. Lincoln Greyhound Park.

No. 90–425–A.

Supreme Court of Rhode Island.

Feb. 7, 1992.

John D. Archetto, Asquith, Merolla, Anderson, Archetto & Kane, Providence, for plaintiff.

Thomas R. Bender, David Whitman, Hanson, Curran, Parks & Whitman, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a judgment entered in favor of the plaintiff in the Superior Court based on his action for breach of contract and negligence. At the close of the evidence the defendant moved for a directed verdict. The trial justice denied the motion, and the defendant raises this issue in support of its appeal. We affirm. We set forth the facts insofar as pertinent to this appeal as the jury could have found them to be.

On December 10, 1984, plaintiff, Robert Palmisciano (Palmisciano), attended Lincoln Greyhound Park, a greyhound-racing establishment owned and operated by defen-

dant, Burrillville Racing Association d.b.a. Lincoln Greyhound Park (Burrillville). On that day plaintiff participated in the Twin Trifecta, a form of parimutuel wagering.

Greyhound racing in Rhode Island is governed by G.L.1956 (1990 Reenactment) chapter 3.1 of title 41 and chapter 9 of title 41. Twin Trifecta betting is governed by rules of greyhound racing promulgated by the Rhode Island Racing and Athletics Commission pursuant to the rule-making power conferred upon it by § 41–3–9. These rules, including Rule 38, which specifically deals with parimutuel wagering, were displayed on the reverse of the wagering programs issued that day. Additionally they were displayed on walls throughout the track facility. In essence the Twin Trifecta rules permit a bettor to select the order of finish of the first three greyhounds in two daily predesignated races. If the bettor holds a winning ticket for the first race of the Trifecta, he or she must exchange that ticket prior to the second race for a Twin Trifecta Exchange Ticket. The bettor must present a winning ticket from the first half of the Twin Trifecta series to a mutuel agent and select the order of finish of the first three greyhounds in the second race of the Trifecta.

Having correctly chosen the order of finish for the ninth race, plaintiff was entitled to present his winning ninth-race Twin Trifecta ticket for monetary winnings amounting to $194 as well as to exchange the ticket for one entitling him to bet in the second half of the Twin Trifecta. The plaintiff then approached window number 21 to present his winning ticket and receive a Twin Trifecta Exchange Ticket. After selecting 2–3–6 as the order of finish for the eleventh race, plaintiff stepped to the side of the window; a short time later he stepped back into the line and requested that the mutuel agent cancel his previous selection and substitute the numbers 5–8–7.

In response to plaintiff's requests the agent took two steps. After canceling the 2–3–6 ticket through the Autotote machine's mechanized process, the agent then pressed computer access codes in an attempt to issue the substitute ticket. The machine did not issue the ticket. The agent enlisted the aid of his supervisor and the Autotote technician. Despite their efforts the three were unable to issue a new ticket before the eleventh race commenced. The order of the finish of that race, the second part of the Twin Trifecta, was 5–8–7. The sum payable to the successful Twin Trifecta bettor amounted to $39,319.

After Burrillville refused to remit the Trifecta pool to plaintiff, he filed this action against both Burrillville and the ticket machine manufacturer, Autotote, Ltd. (Autotote).[1] Prior to trial, Burrillville moved for summary judgment pursuant to Rule 56(c) of the Superior Court Rules of Civil Procedure. The trial court granted the motion. This court reversed and remanded the matter to the Superior Court for trial (Case No. 88–400–A., order dated June 19, 1989). A copy of this order is attached hereto and marked as Appendix A.

At the close of the evidence at trial, defendant moved for a directed verdict pursuant to Rule 50(a). In that motion Burrillville asserted that plaintiff had failed to establish, as a matter of law, that defendant had a duty to issue the ticket. The defendant also contended that plaintiff had failed to possess a winning ticket, thereby precluding his recovery of the winnings as a matter of law.

The trial justice denied the motion.[2] The jury subsequently returned a verdict for plaintiff in the amount of $39,319; answers to interrogatories indicated that the jury

---

**1.** Autotote, Ltd. moved for a directed verdict at the close of plaintiff's case and renewed the motion at the close of the evidence as a whole. The court denied the motion initially but reserved decision on the renewed motion. After discharging the jury, the court denied Autotote's renewed motion. Autotote then moved for a new trial pursuant to Rule 54(b) of the Superior

Court Rules of Civil Procedure. The motion was granted.

**2.** The trial justice was satisfied that the jury could return a verdict for plaintiff. The trial justice reasoned that this court's reversal of the summary judgment precluded him from granting Burrillville's motion on the ground of Palmisciano's failure to hold the winning ticket.

found both breach of contract and negligence on the part of defendant. Judgment entered on June 27, 1990.

We hold that our decision reversing the summary judgment precluded the trial justice from deciding both issues favorably to defendant on Burrillville's motion for a directed verdict. We therefore affirm the judgment.

■■■ The standard for the granting of a directed verdict has been stated frequently by this court. In reviewing a motion for a directed verdict, we must view all evidence in a light most favorable to the adverse parties, draw all reasonable inferences from the evidence in a light most favorable to the adverse parties, and refrain from weighing the evidence and passing upon the credibility of the witnesses. *See Valente v. Rhode Island Lottery Commission*, 544 A.2d 586, 590 (R.I.1988). If there exist some issues upon which reasonable persons might draw conflicting conclusions, the motion for the directed verdict should be denied. *Evans v. Liquori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977).

■■■ On appeal defendant contends that the trial justice erred as a matter of law by refusing to grant its motion for a directed verdict pursuant to Rule 50. Our prior decision reversing summary judgment established that there were triable issues of material fact on both grounds asserted by Burrillville. *See* Rule 56(c). It follows, then, that we could not have reversed the summary judgment entered on defendant's behalf absent a holding that plaintiff was not required to hold a ticket in order to have standing as a matter of law. Similarly a reversal of the grant of summary judgment would have been based implicitly upon a conclusion that defendant owed a duty to plaintiff. The existence of a duty and the extent of that duty are questions of law. *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 37 (R.I.1989); *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I.1987).

■■■ Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter before the court that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact. *Steinberg v. State*, 427 A.2d 338 (R.I.1981); *Ludwig v. Kowal*, 419 A.2d 297 (R.I.1980). In respect to such a motion the court does not pass upon the weight or the credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion. *Lennon v. MacGregor*, 423 A.2d 820 (R.I. 1980). If this standard is compared with that for the consideration of a directed verdict, little difference will be found save the point in the proceeding wherein such motions will be considered. A motion for summary judgment will normally be offered prior to the commencement of trial, and the motion for directed verdict will be offered at the close of the evidence. Each, however, must establish that the proponent of the motion is entitled to judgment as a matter of law and that there are no issues of fact for a jury or other trier of fact to determine or resolve.

■■■ A directed verdict is properly granted notwithstanding the denial of an earlier grant of summary judgment in only a limited set of circumstances. For example, a trial justice is of course not precluded from granting a motion for a directed verdict at the close of all evidence if the material before the court has changed since an earlier denial of a motion for summary judgment. *Rhode Island Hospital Trust National Bank v. National Health Foundation*, 119 R.I. 823, 829, 384 A.2d 301, 305 (1978). Also, a trial justice's denial of a motion for summary judgment would not limit the ability of a justice at trial to direct a verdict in a situation in which the substantive law changed during the course of the pendency of the action. Since neither of these circumstances is present in this case and we are dealing with a mandate from this court, we conclude that the trial justice correctly denied Burrillville's motion.

■■■ In effect our reversal of summary judgment must be deemed to have been equivalent to a holding as a matter of law

that the presentation of a winning ticket was not essential to the plaintiff's case and that Burrillville had a duty to use due and reasonable care to effectuate the second portion of the plaintiff's wager. This situation obviously created factual issues for the jury. This determination had the effect of collaterally estopping Burrillville from relitigating this issue. Consequently the trial justice was constrained to deny the motion for directed verdict and to submit the question of fact to the jury, as he did.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

APPENDIX A

Supreme Court

No. 88–400–Appeal.

Robert Palmisciano

v.

Burrillville Racing Association et al.

ORDER

This case came before a three-member panel of this court on June 14, 1989 pursuant to an order directing both parties to show cause why the appeal from the entry of summary judgment for defendant should not be summarily decided.

After considering the arguments and memoranda of counsel, we are of the opinion that cause has not been shown. Therefore, plaintiff's appeal is sustained. The judgment appealed from is reversed and the case remanded for trial.

Entered as an Order of this Court this 19th day of June 1989.

By Order,
s/Brian B. Burns
Matthew J. Smith
Clerk

Mr. Justice Kelleher and Mr. Justice Weisberger did not participate.