[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter comes before the Court on cross motions for summary judgment. At issue is the correct interpretation of the provisions of G.L. 1956 § 16-16-24 insofar as it pertains to the post-retirement employment of teachers in coaching positions. The Plaintiff has filed a complaint for declaratory and injunctive relief in connection with a decision made by the Employees' Retirement Board of Rhode Island (hereinafter "the Retirement Board") that the aforesaid statute, as amended, bars the Plaintiff, a retired teacher, from continuing to fill the job as Head Football Coach at Mt. Pleasant High School in Providence, Rhode Island In reliance on the Retirement Board's interpretation of § 16-16-24, the Providence School Board (hereinafter "the School Board") dismissed Plaintiff from his coaching position.
 Facts and Travel
The following facts are set forth in a written stipulation of the parties, and therefore are undisputed. In 1967, John Merolla (hereinafter "Plaintiff") began his career as a physical education teacher for the Providence School Department. In addition to his career as a teacher, the Plaintiff also began coaching football in the system in 1968, and in 1987 Plaintiff was appointed as Head Football Coach at Mt. Pleasant High School. In 1999, Plaintiff retired from his position as physical education teacher at Mr. Pleasant but remained the Head Football Coach. Although not contained in the written stipulation of facts, Plaintiff states that during the entire continuous period he served as coach and thereafter head coach, he was never required to reapply for the position, and his appointment never lapsed. (See Merolla Aff. ¶¶ 6 and 7). The Defendants have filed no affidavit to contradict this fact.
Plaintiff is covered under the Collective Bargaining Agreement (CBA) in place between the Providence School Department and the Providence Teachers' Union. Article 11 of the CBA provides:
 "11-9 Any teacher presently holding a position shall retain the position without the necessity of reapplying based upon the teacher's seniority rights under the collective bargaining agreement.
 * * *
 11-13 Any teacher hired as a coach prior to July 1, 1999 and who continues to coach sport(s) shall be allowed to retain no more than two of said coaching positions at the time of retirement.
 11-14 Any teacher who is hired as a coach as of July 1, 1999 or thereafter will not be eligible to continue to coach upon retirement."
Between the months of May through August 2003, Plaintiff engaged in the customary activities to prepare for the upcoming football season. Plaintiff's first official day of work as Head Football Coach for that season was August 15, 2003, the day he passed out equipment. However, on August 20, 2003, Donald Zimmerman, a member of the School Department's Human Resources Division, summoned the Plaintiff to his office and informed him that effective immediately, Plaintiff could no longer serve as Head Football Coach due to the provisions of G.L. 1956 § 16-16-24(b). That statute provides in pertinent part:
 "(b) Any teacher or athletic coach certified pursuant to chapter 11.1 of this title who has retired under the provisions of any law of this state may be employed to fill a vacant position (including, but not limited to, employment as a tutor, mentor principal or mentor assistant principal) by any state school or public school of this state for a period of no more than ninety (90) days in any one school year without any forfeiture of or reduction in the retirement benefits and allowances he or she is receiving or may receive as a retiree. Notice of the employment shall be sent monthly to the state retirement board by the employer and by the retired teacher. Provided, however, that no employment may be offered to a retiree subject to this section after July 1, 2002, unless the employer has made a good faith effort each school year to fill the position with a nonretired employee without success, and certifies in writing that it has done so to the employees' retirement system, and to the bargaining agents of all education unions with whom the employer has collective bargaining agreements."
Subsequent to his removal from the position of Head Football Coach, Plaintiff filed this action against the City of Providence, Superintendent Melody Johnson, the Providence School Department and its individual members, and the Employees' Retirement Board of Rhode Island seeking declaratory and injunctive relief.[1] Plaintiff is asking this Court to declare that the actions that led to his firing were in breach of the CBA and were not mandated by § 16-16-24. Additionally, Plaintiff requests injunctive relief preventing the Defendants from permanently removing him from the position of Head Football Coach.[2]
The Plaintiff has filed a motion for summary judgment in this matter along with a supporting memorandum, affidavits, and exhibits. The Retirement Board has filed a cross motion for summary judgment, also supported by a memorandum and exhibits.
Although the Plaintiff may have had the right to seek an administrative hearing before the Retirement Board, he has chosen to seek declaratory relief in this Court. This Court is generally reluctant to exercise its jurisdiction to hear and determine a dispute prior to the Plaintiff having exhausted his administrative remedies. See Rhode Island EmploymentSecurity Alliance v. Department of Employment and Training, 788 A.2d 465
(R.I. 2002). However, insofar as the declaratory judgment sought herein relates to a matter of statutory construction, the Superior Court has the discretion to exercise its jurisdiction notwithstanding the failure of the Plaintiff to exhaust an administrative avenue of redress through the administrative channels of the Retirement Board. See Town of Tiverton v.Fraternal Order of Police, 372 A.2d 1273, 1275 (R.I. 1977).[3]
 Standard of Review
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297
(R.I. 1980)); Super. Ct. R. Civ. P. Rule 56(c). When the moving party sustains its burden "[t]he opposing parties will not be allowed to rely upon mere allegations or details in their pleadings. Rather, by affidavits or otherwise, they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. BristolBoat Co., 705 A.2d 969 (R.I. 1998) (citing St. Paul Fire MarineInsurance Co., v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)).
During a summary judgment proceeding "the court does not pass upon the weight of credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palimisciano, 603 A.2d at 320 (citing Lennon v. MacGregor,423 A.2d 820 (R.I. 1980)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing Steinberg v.State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)). Therefore, "when an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Industrial Nat'l Bankv. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citing Rhode Island HospitalTrust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)).
 Analysis
It is Plaintiff's contention that the Providence School Department, in its decision to terminate him as Head Football Coach, followed an erroneous interpretation of state law, causing a violation of Plaintiff's alleged right to continue in his incumbent position as he would have under the CBA as applied and understood by the parties.
Although the Retirement Board does not contest that the terms of the CBA at least impliedly provide for the Plaintiff's continued employment as a coach after his retirement from his teaching position, it contends that the provisions of the CBA cannot be enforced in the face of what the Retirement Board believes to be the contrary provisions of state law. It is the Retirement Board's contention that the prohibitions contained §16-16-24 apply to any person who has retired as a teacher, regardless of whether or not the teacher has continued in his or her coaching position. The Board asserts that this interpretation of § 16-16-24 is most consistent with the legislature's intent in enacting § 16-16-24.
It is well settled in Rhode Island that statutory law preempts contrary contract provisions. In State of Rhode Island v. Rhode Island Alliance ofSocial Services Employees, 747 A.2d 465, 469 (R.I. 2000), the Rhode Island Supreme Court declared:
 "[A]pplicable state employment law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards. Thus, if a statute contains or provides for nondelegable and/or nonmodifiable duties, rights, and/or obligations, then neither contractual provisions nor purported past practices nor arbitration awards that would alter those mandates are enforceable."
However, it is axiomatic that where the relevant statute is consistent with the contract at issue, the parties to the contract have a duty to adhere to their contractual obligations. The resolution of this case, therefore, depends upon the proper construction of § 16-16-24, and whether the provisions therein bar the Plaintiff from continuing employment as a coach subsequent to his retirement as a teacher.
The determination of whether Plaintiff was wrongly terminated from the position of Head Football Coach turns on the meanings of the terms "vacant position" and "offered" in § 16-16-24(b). The Rhode Island Supreme Court has consistently held that "when the language of a statute is clear and unambiguous, [t]he [c]ourt must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Statev. Ceraso, 812 A.2d 829, 834 (R.I. 2002) (quoting RIH MedicalFoundation, Inc. v. Nola, 723 A.2d 1123, 1122 (R.I. 1999) (quoting Statev. DiCicco, 707 A.2d 251, 253 (R.I. 1998)). In this case, it is uncontradicted that the Plaintiff continuously served as a coach from 1967 through the date that he was unceremoniously discharged from his duties in August 2003. Under those circumstances, it seems clear that the Plaintiff was not, at the time of his discharge, filling a "vacant position." The clear and sensible meaning of the term "vacant position" is an unoccupied or open position which is waiting to be filled by a permanent employee. See Black's Law Dictionary 1546 (7th ed. 1999) ("vacant" is defined as "empty; unoccupied a vacant office"); Smithv. Midland Brake Inc., 180 F.3d 1154, 1162-63 (10th Cir. 1999). The word "vacant" is not normally used to describe a position that is occupied by a qualified incumbent. See id.; Lammers v. Board of Education of theBorough of Point Pleasant, 633 A.2d 526, 529-30 (N.J. 1993). Additionally, the term "offer" is commonly understood to mean an invitation to enter into an agreement. Black's Law Dictionary 1111 (7th ed. 1999) defines "offer" as "the act or an instance of presenting something for acceptance." Based on the ordinary meanings of these terms, it seems clear that a coaching position filled by someone who has consistently held that position for sixteen years does not constitute a "vacant position" up for "offer." Although § 16-16-24 clearly requires school departments to give preference to non-retirees when vacancies occur, there is nothing in the statute indicating that coaches who have retired from their positions as teachers must be considered ousted from their coaching positions, thus creating a "vacancy."
Moreover, the Retirement Board's reliance on the Retirement System Hearing Officer's recent decision in Jon Badway v. Employees' RetirementSystem of Rhode Island, February 25, 2004, is unpersuasive. In that case, the Petitioner, also a coach in the Providence School System, maintained that § 16-16-24 did not apply to him because he continued his activities as a coach after his retirement from teaching in 1998, before the effective date of the statute. The Hearing Officer rejected the Petitioner's position and found the Retirement System's interpretation to be consistent with the overall intent of § 16-16-24. This Court finds that applying the Board's interpretation of § 16-16-24 to the instant facts is contrary to the plain language of the statute. Our Supreme Court has often declared that the court must give the words of a clear and unambiguous statute their literal meaning. Mottola v. Cirello,789 A.2d 421, 423 (R.I. 2002). The court shall not examine the intent of the legislature in enacting a statute "in the face of the unambiguous statutory language." Id. Because § 16-16-24(b) refers to a "vacant position" rather than a position currently occupied by a retired teacher, this Court finds that § 16-16-24(b) is not applicable to the Plaintiff in the instant case.
The Retirement Board urges the Court to adopt an interpretation of the statute that comports with what it believes to have been the legislative intent. To permit Plaintiff to retain his job as coach, the Board suggests, will result in an unfunded liability for the pension plan that it administers. Whether such a result is the likely outcome of a construction of the statute that would allow an incumbent coach, such as the Plaintiff, to retain that position notwithstanding his retirement as a teacher, is not the pertinent inquiry. When the statutory language simply does not lead to an interpretation permitting the result urged by the Retirement Board, this Court cannot and should not legislate that outcome. Although deference to an agency's interpretation of a statute it administers is appropriate when the agency's interpretation is consistent with the statutory language, such deference is not appropriate when the agency's interpretation runs contrary to the express language used by the legislature. See Lyman v. Employees' Retirement System, 693 A.2d 1030
(R.I. 1997).
Accordingly, under an appropriate construction of § 16-16-24, this Court must determine whether Plaintiff had a contractual right to retain the position of Head Football Coach. The language in Article 11 of the CBA and the undisputed conduct of the parties suggest the parties' mutual understanding that the Plaintiff would remain as Head Football Coach, from year to year, without the necessity of reapplying for the position. The words "any teacher hired as a coach prior to July 1, 1999 and who continues to coach sport(s) shall be allowed to retain no more than two of said coaching positions at the time of retirement" clearly implies that as a coach hired prior to July 1, 1999, Plaintiff had the contractual option of remaining in his position as Head Football Coach after his retirement as a teacher.
The parties have stipulated that prior to the Plaintiff's dismissal, the Providence School Department had not posted the position of Head Football Coach or otherwise made efforts to replace Coach Merolla. Under these circumstances, the Court determines that the Plaintiff would have remained incumbent in his position as Head Football Coach as of August 15, 2003, but for the erroneous application of the provisions of §16-16-24.[4]
Accordingly, Plaintiff's motion for summary judgment is granted, and the Providence School Board should forthwith reinstate the Plaintiff to his position as Head Football Coach at Mt. Pleasant High School. Plaintiff is hereby awarded back pay in the amount of $9,337.65, which amount is stipulated by the parties to be the amount the Plaintiff would have been paid for his coaching services in the autumn of 2003. The Retirement Board's motion for summary judgment is denied.[5] The parties shall present an appropriate order and judgment reflecting the Court's decision.
[1] This matter does not invoke the grievance and arbitration procedure set forth in Article 15 of the Collective Bargaining Agreement, as the City has waived its right to insist that this matter be arbitrated and has actively sought relief before this Court on the applicability of §16-16-24 to the Plaintiff. See e.g., Brissette v. Potter, 560 A.2d 324
(R.I. 1989) (citing North Smithfield Teachers' Association v. NorthSmithfield School Committee, 461 A.2d 930 (R.I. 1983)).
[2] The Plaintiff, by way of an Amended Complaint, added counts for breach of contract and promissory estoppel.
[3] The Court's reaching a decision on this case now, rather than deferring to an initial administrative hearing and appeal under the Administrative Procedures Act, G.L. 1956 § 42-35-1, et. seq. is further supported in that there are no contested issues of material fact, and the Plaintiff's status as a football coach for the upcoming season would remain unresolved were the Plaintiff required to pursue a contested case at the agency level. See Coles Express v. New England Teamsters Trucking Industry Pension Fund, 702 F. Supp. 355, 361 (D. Me. 1988). In addition, the Retirement Board has already made its interpretation §16-16-24 known in the case of Badway v. Employees' Retirement System ofRhode Island, (decision by Hearing Officer Koutsogiane, February 25, 2004), and requiring the Plaintiff to pursue his administrative remedy at this time would be futile. See M.B.T. Construction Corp. v. Edwards,528 A.2d 336, 338 (R.I. 1987).
[4] This Court's interpretation of § 16-16-24 and the declaration of Plaintiff's rights under the CBA render it unnecessary for this Court to reach questions involving promissory estoppel or constitutional deprivations.
[5] The Plaintiff has requested an award of statutory attorney's fees pursuant to the provisions of G.L. 1956 § 42-92-3. As indicated earlier in this Decision, the parties hereto have specifically sought declaratory relief rather than seek relief in an "adjudicatory proceeding" before the Retirement Board. Accordingly, in the absence of such an adjudicatory proceeding, this Court finds inapplicable the provisions for an award of reasonable litigation expenses as provided in § 42-92-3.